**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**LIBERTY MUTUAL FIRE
INSURANCE COMPANY,**

                   **Plaintiff,**

                   v.

**ZURICH AMERICAN
INSURANCE COMPANY,**

                   **Defendant.**

**1:19-cv-414
(GLS/DJS)**

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:**<br>Jaffe, Asher Law Firm<br>600 Third Avenue, 9th Floor<br>New York, NY 10016 | MARSHALL T. POTASHNER, ESQ. |
| Mound Cotton Wollan &<br>Greengrass LLP<br>One New York Plaza, 44th Floor<br>New York, NY 10004 | ORI SHAFIRSTEIN, ESQ. |
| **FOR THE DEFENDANT:**<br>Clausen Miller P.C.<br>28 Liberty Street, 39th Floor<br>New York, NY 10005 | JOHN P. FILIPPIS, ESQ. |
| Clausen, Miller Law Firm<br>One Chase Manhattan Plaza<br>New York, NY 10005 | TYLER J. LORY, ESQ. |

**Gary L. Sharpe
Senior District Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Liberty Mutual Fire Insurance Company commenced this diversity action against defendant Zurich American Insurance Company, seeking injunctive and monetary relief related to Zurich's refusal to defend and indemnify SCA Tissue North America, LLC and SCA North America-Tissue Division, LLC (collectively, hereinafter "SCA") for a separate action commenced in the New York State Supreme Court in Rockland County, entitled *Susan Fisher-Feld v. SCA North America, LLC, SCA North America - Tissue Division, LLC et al.*, Index No. 31412/15 (hereinafter "the Underlying Action"). (Compl., Dkt. No. 1.) Pending is Liberty Mutual's motion for default judgment. (Dkt. No. 10.) For the reasons that follow, Liberty Mutual's motion is denied.

## II. Background

### A. Facts[1]

On April 3, 2015, Susan Fisher-Feld commenced the Underlying

---

[1] The facts stated herein are drawn from the allegations contained in Liberty Mutual's complaint, (Compl.), and, except for allegations related to damages, are accepted as true for purposes of the court's disposition of the pending motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 81 n.1, 84 (2d Cir. 2009).

2

Action against SCA in which she alleged that, in the course of her employment with Carlisle Carrier Corporation, she was injured "while making a freight pick-up" at a certain facility in South Glens Falls, New York (hereinafter "the Facility"). (Compl. ¶¶ 6-7.) Fisher-Feld further alleged that SCA "owned, operated, managed, and controlled the [Facility], including the parking lot and loading area outside," and that Carlisle contracted with SCA to make the pick-up. (*Id.* ¶ 8.) Fischer-Feld alleges that SCA's negligence, carelessness, and/or recklessness caused her injuries. (*Id.* ¶ 11.)

"SCA impleaded Carlisle as a third-party defendant in the Underlying Action," alleging that Carlisle was a cause of the accident, and that Carlisle agreed with SCA to "carry insurance sufficient to meet requirements of the laws, rules, and regulations of all governmental bodies and agencies . . . for . . . bodily injury liability" and to name SCA as an "additional insured." (*Id.* ¶¶ 14-17.) At the time of the alleged injury, Zurich issued an insurance policy to Carlisle (hereinafter "the Zurich Auto Policy"), which had a liability limit of $1,000,000. (*Id.* ¶¶ 17-18.) The Zurich Auto Policy provides that Zurich "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies,

3

caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (*Id.* ¶ 21.)

Zurich also issued a general liability insurance policy to Carlisle ("the Zurich CGL Policy"), which provided in relevant part that "an insured" is "any person or organization who [Carlisle is] required to add as an additional insured on this policy under a written contract or written agreement." (*Id.* ¶¶ 25, 27.) It is apparently uncontested that SCA constituted an "additional insured" entity under the Zurich Auto Policy and the Zurich CGL Policy. (Dkt. No. 18 at 8; Dkt. No. 19 at 5-6.) But Zurich asserts that it was not "obligated to provide insurance coverage to SCA for any bodily injury claim by an employee of Carlisle." (Dkt. No. 18 at 8.)

Liberty Mutual alleges that Zurich has a duty to defend and indemnify SCA in the Underlying Action, and as a result of their refusal to do so, "Liberty Mutual has been forced to drop down and provide a defense to SCA." (Compl., ¶¶ 33, 35, 37.)

**B.   Procedural History**

Liberty Mutual filed its complaint on April 5, 2019, seeking a declaratory judgment that Zurich was and is required to defend and indemnify SCA for the Underlying Action, and that Zurich's insurance

4

coverage to SCA "applies on a primary basis before coverage under the [']Liberty Mutual Policy[']." (*Id.* ¶ 39.)  Additionally, Liberty Mutual alleges that it is entitled to receive from Zurich the costs and fees that Liberty Mutual incurred from defending SCA in the Underlying Action.  (*Id.* ¶ 45.)

Liberty Mutual effected proper service of the complaint on April 22, 2019 by personally serving it at the office of the New York Department of Financial Services on an attorney who was authorized and empowered to receive such service.  (Dkt. No. 5.)  Despite such proper service, Zurich failed to file an answer or otherwise respond to the complaint until nearly three months later on July 11, 2019.  (Dkt. No. 13.)

In the meantime, Liberty Mutual requested an entry of default, which was entered on May 28, 2019.  (Dkt. Nos. 7, 8.)  Liberty Mutual then timely moved for default judgment against Zurich on June 17, 2019.  (Dkt. No. 10.)  One week later, Zurich's counsel made its first notice of appearance.  (Dkt. No. 12.)  Zurich opposes the motion for default judgment and argues that the Clerk's entry of default should be set aside.[2]  (Dkt. No. 18.)  In its

---

[2] Notably, Zurich did not file a motion to vacate the default judgment pursuant to Federal Rules of Civil Procedure 55(c) and 60(d), and, instead, requested such relief in its affidavit in opposition to Liberty Mutual's motion for default judgment.  (Dkt. No. 18 at 1, 10.)  However, based on, among other things, Zurich's thorough analysis of the applicable factors, the court construes Zurich's opposition affidavit as a cross-motion to vacate the default judgment.

reply brief, Liberty Mutual argues that default judgment is warranted because Zurich's default was willful and because it cannot show a complete defense to the allegations. (Dkt. No. 19.)

### III. Standard of Review

Federal Rule of Civil Procedure 55 "provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-505 (2d Cir. 2011). First, the plaintiff must obtain a clerk's entry of default. *See id.*; Fed. R. Civ. P. 55(a); N.D.N.Y. L.R. 55.1. Second, the plaintiff must "apply to the court for entry of a default judgment." *Priestly*, 647 F.3d at 505; *see* N.D.N.Y. L.R. 55.1.

In determining whether to grant a judgment of default, or whether to set aside an entry of default, courts consider three factors: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the party for whom default was awarded; and (3) whether the [defaulting] party has presented a meritorious defense." *Peterson v. Syracuse Police Dep't*, 467 F. App'x 31, 33 (2d Cir. 2012) (citation omitted).

"The dispositions of motions for entries of defaults and default judgments . . . are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given

6

case and to evaluate the credibility and good faith of the parties." *Shah v. N.Y. State Dep't Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (citation omitted). But there is a "strong preference for resolving disputes on the merits." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (internal quotation marks and citation omitted). Thus, "all doubts must be resolved in favor of trial on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993) (citation omitted).

## IV. <u>Discussion</u>

Beginning with the willfulness factor, the factor that "carries the most weight," *De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013), the court is satisfied that Zurich did not willfully default. Indeed, the facts demonstrate that Zurich took steps to defend itself in the action. (Dkt. No. 18 at 2-4.) Liberty Mutual asserts that it properly served Zurich with the complaint on April 22, 2019, and that, therefore, Zurich was required to respond by May 13, 2019. (Dkt. No. 10, Attach. 1 at 2.) However, despite the fact that Liberty Mutual effected personal service upon Zurich by serving it at the office of the New York State Department of Financial Services, (Dkt. No. 5), Zurich did not even receive the complaint from the Department of Financial Services until May 29, 2019—after default was

7

entered. (Dkt. No. 18 at 2-3; Dkt. No. 18, Attach. 2.) And, shortly thereafter, Zurich engaged counsel to defend the litigation and contacted Liberty Mutual's counsel to request an extension of time to file a response, but such request was denied. (Dkt. No. 18 at 3.)

The court understands Liberty Mutual's argument that, even if Zurich did not willfully default, "its failure to act quickly and to vacate the default was certainly willful," (Dkt. No. 19 at 9), and is cognizant of the fact that Zurich did not file an answer until forty-two days after it received the complaint. However, based on the foregoing, and a review of the totality of the circumstances, Zurich's default was, at most, due to negligence or carelessness, not willful conduct as contemplated by the Second Circuit, and the first factor weighs in Zurich's favor. *See S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) ("We have interpreted 'willfulness,' in the context of a default, to refer to conduct that is more than merely negligent or careless." (citations omitted)); *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 60 (2d Cir. 1996) (requiring "bad faith, or at least something more than mere negligence, before rejecting a claim of excusable neglect based on an attorney's or a litigant's error" and noting that even gross negligence "does not necessarily preclude relief" from a default judgment).

8

Next, Liberty Mutual apparently does not assert that it will suffer great prejudice as a result of setting aside the default. (*See generally* Dkt. No. 19.) Nevertheless, setting aside the default would only result in a potentially delayed recovery, which is insufficient to establish prejudice. *See Enron*, 10 F.3d at 98 ("[D]elay standing alone does not establish prejudice." (citation omitted)). Accordingly, the prejudice factor also weighs in favor of Zurich.

Finally, the court must consider whether Zurich has presented a meritorious defense. *See Peterson*, 467 F. App'x at 33. "In order to make a sufficient showing of a meritorious defense . . . the defendant need not establish [its] defense conclusively, but [it] must present credible evidence of facts that would constitute a complete defense." *State Farm Mut. Auto. Ins. Co. v. Cohan*, 409 F. App'x 453, 456 (2d Cir. 2011) (citation omitted). Conclusory details in support of a "meritorious defense" showing are insufficient. *See Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001). "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense. *Id.* (citation omitted).

Here, Zurich has submitted evidence suggesting that it has a complete defense to the allegations in the complaint. (Dkt. No. 18 at 4-9.) Specifically, Zurich's contentions that "[n]othing in any of the [Zurich Auto Policy] provisions indicates that Carlisle or Zurich was obligated to provide insurance coverage to SCA for any bodily injury claim by an employee of Carlisle" and that "Zurich . . . owes no coverage obligation to any named or additional insured in connection with the Zurich CGL Policy—even if Liberty Mutual can establish that [SCA was] actually designated as additional insureds under this Policy," (Dkt. No. 18 at 8-9), appear to serve as a complete defense if proven at trial. Liberty Mutual's responses to Zurich's defenses, (Dkt. No. 19 at 7-9), are well-taken and may have merit, but, at this juncture, Zurich need not establish its defense conclusively. *See Cohan*, 409 F. App'x at 456. Rather, Zurich is only required to "present credible evidence of facts that would constitute a complete defense." *Id.* (citation omitted). And the court is satisfied that it has done so.

In any event, on balance, the factors for setting aside entry of default weigh in favor of Zurich. Accordingly, consistent with the general preference for deciding cases on the merits, *see Enron*, 10 F.3d at 98, Liberty Mutual's motion for default judgment is denied and Zurich's request

10

to set aside the Clerk's entry of default is granted.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Liberty Mutual's motion for default judgment (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Zurich's cross-motion to set aside the Clerk's entry of default (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED** that the Clerk's entry of default (Dkt. No. 8) is **VACATED**; and it is further

**ORDERED** that the parties contact Magistrate Judge Daniel J. Stewart in order to schedule further proceedings in accordance with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 21, 2020
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge